APPENDIX

MEMORANDUM OPINION AND ORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**JALEH BEHROOZI and
ALI ASGHAR TAHERI, Plaintiffs,**

vs-

**L. W. GILMAN, Regional Commissioner,**
Immigration and Naturalization Serv., Defendant.

This is an action for a declaratory judgment finding plaintiffs eligible for permanent residency in the United States as refugees within the meaning of Section 203(a)(7) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(7).

This action is presently before this court on cross motions for summary judgment. The pertinent facts are as follows:

Both plaintiffs entered the United States as citizens and natives of Iran; plaintiff Behroozi as a non-immigrant visitor for pleasure in 1968, and plaintff Taheri as a non-immigrant student in 1964. Both enjoyed extensions of their status as non-immigrant students and visitors through 1970.

On June 26, 1970, both plaintiffs were arrested, together with several other Iranian students, in connection with an incident involving the Iranian Consulate here in San Francisco. Both plaintiffs entered guilty pleas to a charge of false imprisonment and served 35 days in jail.

In the summer of 1971, both plaintiffs applied to the Immigration Service seeking refugee status under Section 1153(a)(7), of the Immigration and Nationality Act, as interpreted in the Immigration Commissioner's decision in *Matter of Zedkova* (13 I. & N. Dec. 626 (BIA,1970).

In their applications for refugee status, plaintiffs alleged that they had "fled" Iran within the meaning of Zedkova, supra; that they had participated, while in the United States, in the activities of the Confederation of Iranian students which had recently been outlawed by the Iranian government; that they were unwilling or

31

unable to return to Iran for fear that they would be imprisoned because of their involvement with the Confederation and the Iranian Consulate incident.

Section 1153(a)(7) provides that conditional entries shall be made available to aliens who satisfy an Immigration officer:

> (A) that (i) because of persecution or fear of persecution on account of race, religion, or political opinion they have fled ... (II) from any country within the general area of the Middle East, and (ii) are unable or unwilling to return to such country or area on account of race, religion, or political opinion ...

The Commissioner denied both applications upon the ground that petitioners had failed to establish that they had "fled" from their Middle East homeland within the meaning of Section 1153(a)(7) and, having denied the petitions upon that ground, made no finding concerning the second requirement of Section 1153(a)(7), namely whether petitioners were unable or unwilling to return to their homeland on account of political opinion.

Petitioners contend that the Commissioner's ruling was arbitrary, an abuse of discretion and a violation of his own regulation, Title 8 CFR, Part. 103.3(e), which provides that decisions selected by the Commissioner shall serve as precedents in all proceedings involving the same issues and, except as they may be modified or overruled by subsequently selected decisions, shall be binding on all officers and employees of the Service in the administration of the Act and that such decisions shall be published and made available to the public in the manner provided in Part 103.9(a).

It has been held that, if there has been an abuse of discretion, i.e., no rational basis for the Commissioner's decision, it may be set aside. *Suh v. Rosenberg*, 437 F.2d 1098 (9th Cir., 1971); *Reyes v. Carter*, 441 F.2d 734 (C.A. 9, 1971).

In *Ariz v. Fullilove* (N.D.Cal. 51148, 9/19/69), (appealed to become Ninth Circuit No. 25242, February 23, 1971) the Court of Appeals remanded with directions to this court to allow the Commissioner an opportunity to distinguish the *Ariz* decision from a prior, *Tenorio* case decided differently on apparently similar facts, or to state why the previous Tenorio decision should not be followed. Implicit in that remand is the proposition that, if valid distinctions of a prior different decision do not appear, or, if the Service does not show why its previous decision should not be followed, then it may be held that there has been arbitrary action in that the Commissioner, once having adopted a precedent, has failed to follow his own regulations by applying the precedent with an even hand in all cases involving the same issue.

In support of their contention in this case, petitioners point out that in a previous decision, i.e., *Matter of Zedkova*, No. A–18049736, decided November 23, 1970, the Commissioner had held that for

purposes of the word "fled", as used in Section 1153(a)(7), it is immaterial whether the circumstances which cause an alien to become a refugee occur before or after departure from the country or area.

Zedkova involved an alien Czechoslovak woman who was admitted to the United States in April 1968, as a non-immigrant visitor for pleasure and to visit friends. While she was here, the Soviet Union in August, 1968 invaded Czechoslovakia. Advised by her anti-communist parents that she might be persecuted by the new Czechoslovakian communist government, she (*sic*) became fearful of returning, and after refusing an order from the Czechoslovakian Embassy in the United States to return, she filed application for refugee classification under Section 1153(a)(7).

The Commissioner, considering the principal issue to be whether under these circumstances she could be regarded as having "fled" from a communist dominated country because of persecution or fear of persecution on account of race, religion or political opinion within the meaning of the statute held that she could be regarded as having "fled" saying:

> "It would be extremely narrow and inequitable to view those nationals who physically fled from Czechoslovakia because of political opinion as refugees and to withhold such status from those who remained out of the country for the same reason. According to "Webster's New International Dictionary," Third Edition, the term "fled" may reasonably be construed to include one who has avoided, abandoned or forsaken a danger or evil. We believe that this broad construction is consonant with the remedial nature and purpose of Section 203(a)(7) of the Act in its use of the term. Within the context of such definition, it is immaterial whether the circumstances which caused an alien to become a refugee occurred before or after departure from the country or area."

There is, of course, the question whether the Commissioner's construction in Zedkova of Section 203(a)(7), i.e., 8 U.S.C. § 1153(a)(7), was legally sustainable—although that question is not raised by petitioners, who merely complain that the Commissioner in their case should follow his ruling in Zedkova.

It should be noted, however, that in *Shubash* v. *Immigration and Naturalization Service*, 450 F.2d 345 (C.A. 9, 1971), the Court, having before it a record showing that Shubash, an Arab Christian, a resident of Jerusalem, carrying a Jordanian passport, left Jerusalem in 1966, not because of persecution, but for personal reasons as a non-immigrant visitor and showing, further, that since Shubash's entry into the United States, Israel had occupied Jerusalem, held that on such record petitioner had failed to meet his burden of meeting either condition A(i) or condition A(ii) of Sec. 1153(a)(7).

Assuming the soundness of the Commissioner's construction of

the law in Zedkova it appears that petitioners here were in virtually identical positions with Zedkova insofar as they, like Zedkova, had come to the United States for reasons wholly unrelated to flight arising out of any fear of political persecution in their homeland. In both cases any fear of return for such reasons arose out of changed conditions in the homeland occurring after the aliens had come to the United States—in Zedkova a Communist takeover; in this case according to petitioner's evidence presented to the Commissioner in support of their applications, an announced policy of the Iranian government to deal punitively with Iranians who, like these two petitioners, associated themselves with the Confederation of Iranian Students, a politically oriented organization opposed to the established Iranian regime.

Since, according to the Commissioner's Zedkova decision, "it is immaterial whether the circumstances which cause an alien to become a refugee, occurred before or after departure from the country or area", the question arises whether there is any rational basis for distinguishing the situations of these petitioners from Zedkova, insofar as the word "fled" is concerned, or any rational basis for not following the Zedkova decision here.

The Commissioner here considered the previous Zedkova decision and made a distinction from Zedkova upon the theory that in the pending cases the circumstances, occurring after petitioner's departure from Iran and causing their fear to return, are different from those constituting the analogous occurrence in Czechoslovakia after Zedkova's departure and causing her fear to return. The key to the Commissioner's distinction appears at p. 3 of his decision in this case where he states: "Iran has not been invaded by another country since the applicant's departure as Czechoslovakia was in the matter of Zedkova."

Of course, the circumstances are different, but both were political changes, one a communist takeover in Czechoslovakia and the other an announced governmental policy of Iran directed at the political activities of members, including petitioners, of the Confederation of Iranian students.

The Commissioner's so called distinction appears to be a distinction as to detail rather than a distinction in principle. Having in mind the procedure followed by the Court of Appeals in *Ariz* v. *Fullilove*, supra, we are of the opinion that this case should be remanded, witout any final decision by this court, in order to give the Commissioner an opportunity to reconsider his decision in this case in light of our analysis of the situation, the Commissioner to report to this court within 60 days concerning whatever view or action he may take and this court reserving full power to reconsider its own tentative views expressed herein.

34

It is so ORDERED.
DATED: December 22, 1972

Matter of Jaleh Behroozi and Asghar Taheri

Decided by Regional Commissioner July 10, 1973

These applications are before the Regional Commisioner pursuant to an order of the U.S. District Court for the Northern District of California for reconsideration of denial decisions dated January 14 and 21, 1972, and to report to the Court concerning whatever views or action taken.

Both applicants are natives and citizens of Iran. Mr. Taheri entered the United States as a non-immigrant student on May 13, 1964, with authorized stay last extended until November 2, 1970. Miss Behroozi entered the United States as a nonimmigrant visitor for pleasure on October 21, 1968. Her status was changed from visitor to student on September 8, 1969, with authorized stay last granted until August 4, 1971.

Both applicants were arrested on June 26, 1970, along with other Iranian students in connection with the invasion and damaging the premises of the Iranian Consulate in San Francisco, California. They subsequently entered guilty pleas to a charge of false imprisonment and served 35 days in jail.

The applicants applied for classification as refugees under the proviso to section 203(a)(7) of the Immigration and Nationality Act, as amended, during 1971. They alleged that they "fled" from Iran within the meaning of that term as construed in the *Matter of Zedkova,* Interm Decision No. 2062 and that they were unwilling or unable to return to Iran as they feared that they would be jailed in Iran because of their activities with the Confederation of Iranian Students and because of their arrest for taking part in the anti-Iranian government demonstration at the Consulate of Iran in San Francisco.

Mr. Taheri's application for classification as a refugee under the proviso to section 203(a)(7) was denied on January 14, 1972. That denial decision was selected by the Commissioner of this Service as a precedent decision and designated as Interim Decision No. 2124. Miss Behroozi's application was denied on January 21, 1972. In both cases, it was decided that the applicants had not established that they had "fled" from Iran within the meaning of section 203(a)(7). Both applicants had departed from Iran temporarily for personal reasons and not because of persecution or fear of persecution. It was decided that they had not "fled" from Iran within the meaning of that term as construed in the *Matter of Zedkova,* supra, as that case involved the development of a situation

35

subequent to the alien's departure over which the alien had no control, whereas in the instant cases, the applicants' situations were produced by their own deliberate actions.

A complaint for declaratory judgment was filed in the District Court March 1, 1972, as a result of the denial decisions. The Court stated in part in its decision of December 22, 1972, that "it *appears* that petitioners here were in virtually identical positions with Zedkova" (emphasis supplied). The Court added that "the question arises whether there is any rational basis for distinguishing the situations of these petitioners from Zedkova, insofar as the word 'fled' is concerned, or any rational basis for not following the Zedkova decision here, and that the "so called distinction appears to be a distinction as to detail rather than a distinction in principle." In addition, the court stated, "The key to the Commissioner's distinction appears at p. 3 of his decision in this case where he states: 'Iran has not been invaded by another country since the applicant's departure as Czechoslovakia was in the Matter of Zedkova.'" Thereafter, these cases were remanded to give the Regional Commissioner an opportunity to reconsider his decision in light of the Court's analysis of the situation and to report to the Court within 60 days. The Service was subsequently granted until July 20, 1973, to make the required report.

The Director, Office of Refugee and Migration Affairs, Department of State, was requested on January 23, 1973, to furnish an advisory opinion as to the validity of applicants' claim that they fear persecution in Iran because of their activities with the Confederation of Iranian Students.

In his response dated June 7, 1973, the Director stated, in part, as follows:

> We believe that important differences exist between the situation of the Iranian students and that of Miss Zedkova, and that there are substantial policy reasons for insisting that the distinction be maintained in these cases. As you are aware, there is a relatively large number of foreign students in the United States at all times. The expenses of many of these students are paid by the government of the United States or of their own country with the intention that they will return home and there utilize the education and experience received in the United States. Many students assume an express obligation to so return. However, there has consistently been a number of foreign students who decide to remain in the United States more or less indefinitely, sometimes believing that opportunities for personal advancement are better here and sometimes for one or more of a variety of other reasons.

In this context it should be noted that the duly enacted laws of foreign countries are very often less permissive than our own in the area of political dissent. It is not uncommon in many countries for membership in specified political organizations to be illegal even in the absence of political activities beyond simple member-

ship. It is therefore not difficult for a foreign student or other alien in the United States to join disfavored political organizations, to make inflammatory political statements or to engage in protest activity, any or all of which might render such persons subject to criminal prosecution in their native countries. For these reasons, we feel that applications for refugee status by foreign students who came originally to the United States not for political asylum but for education should be examined with extreme care and not in the context of a section 203(a)(7) proceeding, which fails to include a full administrative hearing for development of relevant facts and review by the Board of Immigration Appeals.

As indicated above, we believe that important distinctions exist between the cases of the Iranian students and that of Miss Zedkova, and that such distinctions should be urged upon the Court. In *Zedkova*, the Commissioner found that "It would be extremely narrow and inequitable to view those nationals who physically fled from Czechoslovakia because of political opinion as refugees and to withhold such status from those who remained out of the country for the very same reason." That determination was reached in the context of three specific findings of fact appearing in the decision which we consider important: first, that "several thousand Czechoslovak nationals escaped into Austria and Germany where they sought classification as refugees"; second, that "it has been satisfactorily established that the applicant abandoned her residence in Czechoslovakia because of fear of persecution on account of her political belief . . ."; and third, that there were new circumstances in Czechoslovakia which caused her to become an alien.[1]

1. *In context of other refugees*. This finding indicates that Miss Zedkova's application for refugee status was made in the context of circumstances which strongly supported her application, i.e., the exodus from her native country of a mass of other citizens as a result of a political upheaval. It is notable that the *Zedkova* case did not arise as an isolated instance of alleged persecution, but rather in the context of a large number of similar applications which, according to the Regional Commissioner's decision, resulted in depletion of the visa quota under section 203(a)(7) for the first time since it became effective.

Although we have not made an exhaustive review of the legislative history of section 203(a)(7) and its predecessors, our limited research indicates this preference category was intended

---

[1] Per discussion with the Dept. of State, the word alien was intended to be "refugee."

by Congress to benefit refugees as that term is customarily understood, that is, persons who have actually fled their native countries because of persecution, usually political persecution. It is our understanding that the statute finds its origin in the participation of the United States in the resettlement of large numbers of World War II refugees, and, later, of persons who became refugees as a result of the Hungarian Revolution and the Suez conflict, both in 1956. While section 203(a)(7) may also apply to isolated cases of persons who actually flee because of fear of persecution from Communist or Middle Eastern countries, we do not believe this legislation properly can be interpreted so broadly as to include aliens who have come to this country as students and who thereafter claim refugee status on the basis of their own activities here some years after their arrival.

In the *Zedkova* case, the Regional Commissioner recognized the anomaly that would exist if persons who coincidentally were outside of Czechoslovakia for nonpolitical reasons at the time of the Soviet invasion were treated differently from the thousands of refugees who physically escaped into Austria and Germany. Such an anomaly, however, cannot be found in cases such as those of the present Iranian students. Although Iranians frequently travel abroad for educational and other purposes, and although a small number of the students abroad are opposed to the present government of their country, there has been no exodus of persecuted Iranians from Iran.

We note that a change of status to permanent resident under section 245, based on an application under 203(a)(7), would ultimately lead to United States citizenship, a benefit beyond that required under the Status of Refugees Convention and the Protocol thereto. We also note that if section 203(a)(7) status is denied in cases such as the present on the ground the applicant has not fled his country, suspension (sic—per discussion with the Department of State, the word suspension was intended to be "withholding") of deportation remains available under section 243(h). It is believed, therefore, that the latter remedy is most in accordance with Congressional intent where the alien has not physically fled his country because of fear of persecution or does not find himself in such unusual circumstances as those surrounding the *Zedkova* case.

2. *Abandonment of residence*. It is clear from the facts of the *Zedkova* case that the applicant abandoned her residence very shortly after arriving in the United States as a direct result of the Soviet invasion of Czechoslovakia. She had not come to the United States several years before and remained here under a continuously renewed student or visitor's visa, and so there could be no

question in her case as to the reason she had remained out of her country for an extended period or of at what point in time she actually abandoned her residence. The circumstances of the present cases, however, make it questionable that Mr. Taheri and Miss Behroozi have abandoned their residences in Iran because of fear of persecution. Mr. Taheri first came to the United States in 1964 and to our knowledge has never evidenced any intention of returning to Iran. His first overt political activity appears to have occurred in 1970, and although we, of course, cannot know at what precise point Mr. Taheri might have given up any real intention of returning to his native country, it seems entirely possible that it was before 1970. Although Miss Behroozi did not arrive in the United States until 1968, approximately 3 years before the date of her application for permanent resident status, there are grounds for believing that her reasons for abandoning her Iran residence are more closely related to the emigration of her parents to Israel than to a well-founded fear of persecution in Iran.

Where, as here, the circumstances surrounding a decision to abandon former residence reasonably could lead to a conclusion that the decision was made for reasons other than fear of persecution or would have been made regardless of any such fear, the applicant should be required to present persuasive evidence that he decided to remain in the United States because of such fear. This issue, of course, goes to the statutory requirement that the applicant have "fled" from his country and is distinct from the reasons he presently may be unable or unwilling to return.

3. *New circumstances in alien's country.* In its December 22, 1972 opinion, the District Court noted that in both *Zedkova* and the present cases "any fear or return for such reasons (political persecution) arose out of changed conditions in the homeland after the aliens had come to the United States ..." This element of changed conditions is clearly necessary in the case of aliens who have not physically fled from their countries, and it points up the inherent difficulty in the theory of constructive flight. We do not believe that any new circumstances have occurred in Iran that are similar to the 1968 events in Cvechoslovakia or that otherwise support the applicants' claim that they have fled Iran for fear of persecution within the meaning of section 203(a)(7).

According to documents submitted to the INS by counsel for the applicants, it was announced in Iran in January 1971 that members of the Confederation of Iranian Students would after March 21, 1971 be subject to prosecution under a penal statute enacted June 12, 1931. This announcement followed the June 26, 1970 occupation of the Iranian Consulate in San Francisco by 41 members of the Confederation, including the applicants, and a series of similar

demonstrations in Europe. The applicants were indicted in California on five counts, including false imprisonment by fraud, menace and violence and destruction of property, and were convicted of false imprisonment. We believe that the announcement in Iran of January 21, 1971 resulted in part from the criminal act in San Francisco of the applicants and other members of the Confederation.

In *Zedkova* a wholly new government had been installed in the alien's country after events that resulted in the actual flight of thousands of refugees. In the present case, there was no new government or law in Iran, nor any substantive new policy; having criminally attacked Iranian government property and officials in San Francisco, the applicants were subject to prosecution under the 1931 legislation, both for their own acts and for memberhip in the Confederation which apparently had organized the Consulate occupation. Of course, that legislation was available for prosecution of the applicants whether or not there was any official announcement that it would be employed.

Prosecution for a violation of a penal statute by appropriate authorities of a foreign country because of unlawful membership in an organization is not necessarily persecution because of political opinion within the meaning of section 203(a)(7). The applicants must establish that they are statutorily eligible for the classification sought. In addition, they must establish that their applications should be granted as a matter of discretion. They, along with other members of the Confederation, have been involved in criminal acts in violation of the laws of the United States. This militates against the favorable exercise of the Attorney General's discretionary authority and is a rational basis, in our opinion, for the denial of their application. We believe the applicants should not benefit directly or indirectly from their wilful and deliberate illegal actions. This was the key to the Regional Commissioner's prior decision, rather than that stated in the Court's order remanding these cases for reconsideration, and supports the reason why their situation was found to be distinguishable from Zedkova.

Should we find the applicants eligible for classification as refugees, it could establish a precedent enabling an individual alien or group of foreign students from any country having a strict policy or attitude against political dissent to demonstrate in the United States against their government, as did these applicants, thus putting them in disfavor with their government and qualify such alien or group of foreign students for classification as refugees on the basis of a claim that they would be unable or unwilling to return to their country because of fear of persecution because of

political opinion. This is not what the statute or the decision in the *Matter of Zedkova* intended and should not be so interpreted.

In view of the foregoing and after carefully reconsidering these cases, it is concluded that the applications were properly denied. The Regional Commissioner's decisions of January 14 and 21 will be reaffirmed.

ORDER: IT IS ORDERED that the denial decisions of January 14 and 21, 1972 be and the same are hereby reaffirmed

Memorandum of Decision

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**JALEH BEHROOZI** and
**ALI ASGHAR TAHERI**, Plaintiffs,

vs-

**L. W. GILMAN**, Regional Commissioner,Immigration and Naturalization Serv.,
Defendant.

This is an action for a declaratory judgment finding plaintiffs eligible for classification as refugees within the meaning of section 203(a)(7) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(7), in order that they may have preference in obtaining immigrant visas.

This action is presently before this court on cross-motions for summary judgment.

Reference is hereby made to this court's previous Memorandum of Opinion and Order of December 22, 1972, for the background of the present ruling.

In that Memorandum we ordered the case remanded to the Commissioner for a report on whether the Commissioner's ruling (Taheri, A–13748152 (1/14/72) and Behroozi, A–19181823 (1/21/73)) could be deemed an abuse of discretion for being contrary to his previous ruling in *Zedkova*, No. A–18049736, (11/23/70) upon a record in this case that then appeared to this court to be similar to *Zedkova* and, if so, a violation of the Commissioner's own regulation 8 CFR Part 103.3(e) and 103.9(a) which provide in effect that decisions selected by the Commissioner shall serve as binding precedents in all proceedings involving the same issues—except as they may be modified or overruled by subsequently selected decisions.

The Commissioner had ruled in Zedkova that the term "fled" as used in Sec. 203(a)(7) of the Immigration and Nationality Act, in 8 U.S.C. § 1153(a)(7) may be broadly construed to include one who has

41

avoided, abandoned or forsaken a danger or evil and that, when the statute is so construed, it becomes immaterial whether the circumstances creating refugee status occurred prior or subsequent to departure from the country or area; that an alien, who departed temporarily from Czechoslovakia prior to a Communist upheaval there in 1968 but who because of political opinion feared to return in view of changed conditions in that country , may be considered as having constructively "fled" within the meaning of the statute.

The Report of the Commissioner, filed herein July 10, 1973, pursuant to our order, is to the effect that the *Zedkova* ruling that petitioner there had constructively "fled" Czechoslovakia within the meaning of the statute was distinguishable from the present case in that the *Zedkova* ruling was made in a context of three, specific ancillary findings of fact appearing in that decision but, according to the Commissioner Report, not present in the pending case.

The *Zedkova* ancillary findings were as follows:

(1) That "several thousand Czechoslovakian Nationals escaped into Austria and Germany where they sought classification as refugees."

According to the Commissioner, the bearing of this finding on the ultimate finding that *Zedkova* had constructively "fled" within the meaning of the statute is that an actual exodus of a number of persons from the country in question (because of persecution or fear of persecution on account of race, religion or political opinion) is reasonably required to justify an ultimate finding that one who happens to be outside that country at the time of such exodus and who decides to remain away for similar reasons has constructively fled the country within the meaning of the statute.

The Commissioner contends that in the present case no such essential ancillary finding has been or can be made, pointing out that no such actual exodus of Iranians from their country has been shown or even claimed by petitioners; that in the present case the only showing is that petitioners left Iran as non-immigrants for temporary residence here in pursuit of their pleasure and/or education.

(2) That it was satisfactorily established in *Zedkova* that she had formed an intent to abandon her residence in Czechoslovakia *because* of fear of persecution on account of her political belief.

According to the Commissioner, the bearing of this finding on the ultimate finding that *Zedkova* had constructively "fled" within the meaning of the statute is that to support a finding of such constructive flight a reasonable showing should be made of an

42

intent to abandon residence in the former country *because* of the persecution (or fear of persecution) that caused the actual exodus of others.

The Commissioner contends that no such ancillary finding has been or can be made in the present case, pointing out that the evidence makes it questionable whether either of the two petitioners abandoned their Iran residence *because* of fear of persecution; that the evidence is such that petitioner Taheri, who came to the United States in 1964 as a nonimmigrant student, and petitioner, Behroozi, who entered in 1968, as a non-immigrant visitor for pleasure (later for study), might well be found to have decided to abandon their Iran residence, not a a result of fear of persecution, but for other reasons formed even before the announcement of any Iranian policy to persecute them.

(3) That in *Zedkova* there were new circumstances in Czechoslovakia which caused *Zedkova* to become an alien.

According to the Report, the bearing of this finding upon the ultimate finding of constructive flight is that a showing of changed conditions since an alien's actual departure from his country, is reasonably necessary in the case of aliens who have not physically fled their country but who claim constructive flight. The Commissioner points out that in *Zedkova* the finding of changed conditions, i.e., new circumstances, was supported by evidence that a wholly new government had been installed in the country since her departure, an event that caused the actual flight of thousands of others.

The Commissioner contends that no such ancillary finding has been or can be made in the present case, pointing out that the evidence here is merely to the effect that in January, 1971, the Iranian government announced that members of the Confederation of Iranian students would, after March 21, 1971, be subject to prosecution under an Iranian penal statute enacted as long ago as 1931; that this announcement followed and, according to the Commissioner, was the result of a June 26, 1970 occupation of the Iranian Consulate in San Francisco by forty-one members of the Confederation, including petitioners here, who were thereafter indicted in California on five counts and convicted of false imprisonment.

Review by the District Court of rulings of the Immigration Commissioner is limited to determination of whether there has been an abuse of discretion, i.e., a decision without evidence to support it or a decision based on an incorrect understanding of the law. *Song Jook Suh v. Rosenberg,* 427 F.2d 1098 (C.A. 9, 1971).

Further, the burden of proof at the administrative level is upon the petitioner, not upon the Commissioner, to show that they fall

within the terms of the statute as reasonably interpreted by the Commissioner.

The court concludes that the Commissioner's interpretation of the statute to the effect that flight may be constructive as well as actual (provided that a claim of constructive flight is supported by the ancillary factual elements above discussed) was not an unreasonable or incorrect interpretation of the law; that in the case at bar the evidence was such that the Commissioner could reasonably find it insufficient to support the essential elements for *constructive* flight; that the ruling of the Commissioner in the present case was not an arbitrary departure from the ruling in *Zedkova* on the issue of constructive flight, and, therefore, was not a violation of 8 CFR Part 103.3(e) or 103.9(a).

**IT IS, THEREFORE, ORDERED** that the defendant's motion for summary judgment be granted and plaintiffs' motion for summary judgment be denied, upon the condition, however, that within thirty (30) days from the date of this Memorandum and Order the Commissioner supplement his previous decisions in Taheri and Behroozi by adding thereto his Report herein, together with a copy of this Memorandum, in order to clearly distinguish this case from *Zedkova* and so make clear that there has been no violation of 8 CFR 103.3(e) or 103.9(a).

Dated: December 11, 1974.